UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AHZAR SAIYED, individually and as Administrator of the ESTATE OF MIKAZNAAZ SAIYED, deceased, and as father and next friend of HOORAYN SAIYED, a minor, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 20-cv-5524 |
| v. | ) ) | Hon. Steven C. Seeger |
| UNITED STATES OF AMERICA, *et al.*, | ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM OPINION AND ORDER

A month after the close of fact discovery, Plaintiff Ahzar Saiyed requested leave to file a second amended complaint to "conform[] the pleadings to the proof" in this medical malpractice and wrongful death case. *See* 5/29/24 Mtn. (Dckt. No. 144). Defendants opposed the motion, arguing that the amended complaint would add a new, never-before-seen theory of liability.

The proposed amended complaint comes late in the game. Fact discovery was a long slog, consuming 18 months. The parties received extension after extension. After a year and a half of fact gathering, discovery finally closed. The parties are now in the middle of expert disclosures and expert discovery.

Amending the complaint at this late stage would require the reopening of fact discovery. And it would require the reopening of expert disclosures and expert discovery, too. That's a recipe for more cost and more delay. That's not what "justice" requires. *See* Fed. R. Civ. P. 15(a)(2).

For the reasons that follow, Plaintiff's motion for leave to file a second amended complaint is hereby denied.

### Background

The case is a medical malpractice and wrongful death action about the passing of a mother during childbirth. Mikaznaaz Saiyed gave birth to Plaintiff Hoorayn Saiyed at Swedish Memorial Hospital in Chicago in May 2019. She received a C-section, and things went terribly wrong. Mrs. Saiyed was rushed to the ICU and ultimately transferred to another hospital, where she passed away on June 2, 2019. Her child survived, but suffered a severe brain injury.

Ahzar Saiyed, the spouse of the mother and the father of the child, filed suit against the government and a few entities collectively known as the "Swedish Defendants" – Swedish Covenant Hospital, Swedish Covenant Health, and Swedish Covenant Management Services, Inc. Saiyed alleged negligence by the medical professionals involved in the decedent's pre-delivery care.

The case was filed in 2020. The case was reassigned to this Court from Judge Dow in October 2022.

On November 2, 2022, this Court issued an order and noted that there was no deadline for fact discovery in place. *See* 11/2/22 Order (Dckt. No. 53). The Court took note of the fact that the parties expected about a year of fact discovery. The Court stated: "That's on the outer limits of what this Court will allow, absent special circumstances." *Id.*

A few weeks later, after receiving the joint status report, this Court set a fact discovery deadline of October 20, 2023. *See* 12/12/22 Order (Dckt. No. 55). This Court added: "That's roughly 10 more months of discovery in a case filed in 2020, which should be enough. The parties must proceed with diligence, and *must assume that the deadline will not move* absent a concrete demonstration of good cause." *Id.* (emphasis added). This Court reaffirmed that deadline in an order on May 8, 2023. *See* 5/8/23 Order (Dckt. No. 68).

The parties got a late jump on depositions. In their status report on December 9, 2022, the parties revealed that they planned to take 25–30 depositions. *See* 12/9/22 Joint Status Report, at ¶ 3 (Dckt. No. 54). Five months later, on May 22, 2023, the parties revealed that they planned to "begin depositions in the next few months." *See* 5/22/23 Joint Status Report, at ¶ 3 (Dckt. No. 73).

Almost three month later, the parties reported that they were "now ready to proceed with party and fact witness depositions." *See* 8/8/23 Joint Status Report, at ¶ 3 (Dckt. No. 99). And they asked for more time for discovery. Once again, they expressed an intent to take 25–30 depositions. *See* 8/8/23 Mtn. (Dckt. No. 100).

At that point, the fact discovery deadline was only two months away. On August 14, 2023, this Court granted a joint motion to extend the fact discovery deadline. *See* 8/14/23 Order (Dckt. No. 103). This Court extended the deadline from October 20, 2023 to February 20, 2024. So, the Court gave the parties four additional months of discovery.

By the end of December 2023, the parties had taken only three depositions. *See* Joint Status Report, at ¶ 3 (Dckt. No. 111). But it looked like the parties were making some progress.

On December 21, 2023, this Court denied without prejudice a joint motion for a two-month extension of fact discovery (Dckt. No. 112). In that order, this Court summarized the history of the deadlines for fact discovery and the extensions, explaining that "this case was filed in 2020, three years ago, and *it isn't getting any younger*." *See* 12/21/23 Order (emphasis added). The Court also noted that "*there is an interest in wrapping everything up*." *Id.* (emphasis added).

2

On February 22, 2024, this Court granted a motion to extend fact discovery in part, and did so "reluctantly." *See* 2/22/24 Order (Dckt. No. 125). The Court granted a five-week extension. *Id.* At that point, the parties had taken nine depositions. *See* 2/19/24 Mtn. (Dckt. No. 124).

This Court repeated that it was not inclined to extend discovery again. The Court noted: "*The parties should not expect another extension of fact discovery*, so they must complete discovery with diligence and a sense of purpose." *See* 2/22/24 Order (Dckt. No. 125) (emphasis added). "This case was filed in 2020, and it is high time to bring discovery to a close." *Id.*

That forewarning didn't leave the intended impression. A few weeks later, Plaintiff filed yet another motion for yet another extension of time. Plaintiff explained that at least 12 depositions were in the works, and maybe more. *See* 3/22/24 Mtn., at ¶¶ 5, 7 (Dckt. No. 128). Plaintiff's counsel attached an email with a list of 25 potential witnesses to depose. *See* 2/23/24 Email (Dckt. No. 128, at 8–9 of 16).

On April 8, 2024, this Court granted in part Plaintiff's motion for a 17-day extension of fact discovery. *See* 4/8/24 Order (Dckt. No. 134). The Court noted: "*The Court will not extend the schedule again*. Ordinarily, the Court would simply declare all depositions to be done. But given the nature of the case, the Court will grant a little extra latitude, despite a strong inclination to declare everything over." *Id.* (emphasis added).

"Overall, the parties got a *late start* on depositions, which led to a *mad scramble. Waiting so long to start depositions creates risks*, including the risk that you might not be able to take all of the depositions that you want." *Id.* (emphasis added).

So, fact discovery finally closed on April 26, 2024.

When it was all said and done, fact discovery lasted from September 2022 until April 2024, more than a year and a half. *See* Joint Status Report, at 2–3 (Dckt. No. 44); 4/8/24 Order (Dckt. No. 134). The parties moved for an extension at least four times. *See* 8/8/23 Mtn. (Dckt. No. 100); 12/18/23 Mtn. (Dckt. No. 110); 2/19/24 Mtn. (Dckt. No. 124); 3/22/24 Mtn. (Dckt. No. 128).

On May 29, 2024, Plaintiff filed a motion for leave to file a second amended complaint (Dckt. No. 144). Plaintiff seeks to add allegations about three alleged failures: (1) a failure to "properly and/or timely treat and respond to the alleged amniotic fluid embolism," (2) a failure to properly and/or timely treat the Plaintiff after her decompensation and/or cesarean section," and (3) a failure to "develop, promulgate, institute, or enforce rules, guidelines or policies and procedures with respect to care and management of patients requiring blood products."

Plaintiff downplayed the proposed amendment. As Plaintiff sees it, the amended complaint simply seeks to "conform the pleadings to the proofs." *Id.*

Defendants oppose that motion (Dckt. Nos. 150, 151).

3

The Swedish Defendants contend that the proposed second amended complaint "presents a completely new theory" of liability. *See* Swedish Defs.' Resp., at 2 (Dckt. No. 150). As they see it, Plaintiff's expert disclosures from May 27, 2024, and Plaintiff's proposed complaint, mark the first time that Plaintiff introduced theories "relating not to labor and delivery care leading up to a C-section on May 29, 2019, but instead to care that occurred on May 30, 2019, after the C-section when the decedent experienced post-partum hemorrhage." *Id.* at 2–3.

The government points out that Plaintiff did not seek leave to amend until after the close of fact discovery. Discovery "proceeded on the theories of negligence asserted in the pleadings, not on the new theory that plaintiff would like to add." *See* Govt.'s Resp., at 4 (Dckt. No. 151). The government argues that amending the complaint would require the parties to take additional discovery about the blood transfusions. *Id.* at 4–6. The government asks the Court to deny leave to amend because of the late stage of the litigation and the potential for undue prejudice to Defendants. *Id.* at 6.

**Analysis**

Rule 15 provides that a district court "should freely give leave [to amend a pleading] when justice so requires." *See* Fed. R. Civ. P. 15(a)(2).

Since time immemorial, the nature of "justice" has confounded and befuddled the world's deepest thinkers. At bottom, "justice" embraces the concept that something is the right thing to do. Rule 15(a)(2) uses that enigmatic term because lots of different considerations can come into play. It sweeps broadly, and covers the waterfront.

Whatever it means, "justice" doesn't mean "because the plaintiff wants it." And it doesn't mean "justice *for the plaintiff*," either. Amending the complaint isn't permissible simply because it would help a plaintiff's case. A defendant's interests matter, too. Institutional interests of the judiciary also are at stake. And the public interest hovers over everything.

A wide range of considerations come into play when considering whether amending a complaint would promote justice. For that reason, "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

The older the case, the more trouble it can cause to change gears and unveil something new. "The issue of undue delay generally arises when a plaintiff seeks leave to amend deep into the litigation." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014). "[T]he longer the delay, the greater the presumption against granting leave to amend. The longer the delay in seeking leave to amend, the likelier is it both that the delay is inexcusable . . . and that granting leave to amend will, by further delaying the lawsuit, impair the public interest in the prompt resolution of legal disputes." *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988).

Plaintiff pitched the amended complaint as a simple effort to conform the pleadings to the proof. But there is more to the story. The amended complaint would add a new theory of

4

liability. Defendants learned about the new theory of liability on May 27, 2024, a full month after fact discovery closed on April 26, 2024. That's too late.

As things stand, the operative complaint alleges that Defendants acted negligently before the C-section. *See* Am. Cplt. (Dckt. No. 22). The complaint also attached an affidavit and medical report, as required under Illinois law in medical malpractice cases. *See Young v. United States*, 942 F.3d 349, 350 (7th Cir. 2019). The medical report referred to unsafe medical practices when decedent was in labor (only), and said nothing about any malpractice after the C-section. *See* Report (Dckt. No. 22, at 23–25).

The amended complaint unveiled something new. The proposed amendment would add a new theory of liability, by adding allegations about decedent's treatment after the C-section. That's different. And that's no small thing. Defendants went through 18 months of discovery without the benefit of knowing that the post-delivery care was on the table.

Blood transfusions and other post-delivery care didn't get much attention during discovery, if at all. To be sure, there were a few references to blood transfusions during discovery. For instance, Swedish Covenant produced a policy about blood transfusions.

There is a little testimony about blood transfusions, but not much. For example, Plaintiff's counsel asked Dr. Buyea questions about blood transfusions. But Dr. Buyea was not present during the decedent's post-operative care. Dr. Buyea did not treat the decedent's bleeding, and had no personal knowledge about the transfusions received by decedent. So the testimony did not advance the ball very far.

Perhaps tellingly, Dr. Buyea was one of the final witnesses deposed during fact discovery. She was deposed on March 21, 2024, about a month before the deadline.

Other significant witnesses didn't get any questions about blood transfusions at all. For example, Dr. Lambeth provided care on the labor-and-delivery floor. But Dr. Lambeth was asked no questions about her treatment of the decedent's bleeding. Counsel did not ask Dr. Lambeth about decedent's treatment in the ICU, either. Dr. Lambeth was deposed on October 24, 2023.

By the look of things, testimony about blood transfusions was few and far between. That's not particularly surprising, given that post-operative blood transfusions weren't part of the theory of the case. The parties did not pursue that topic with vigor because it wasn't part of Plaintiff's theory of liability.

Allowing an amended complaint at this late stage would require reopening discovery, so that the parties could have a fair opportunity to explore a new theory of liability. The parties did not explore the issue of blood transfusions and post-operative bleeding during 18 months of discovery. That's understandable, given that it wasn't part of the claims. It wouldn't be fair to force Defendants to go to trial on a theory of the case that they didn't explore during discovery.

Reopening discovery would be costly. Depositions are expensive enough, without doing them twice. Reopening discovery could come with a significant price tag.

Reopening discovery would add more delay to a long-delayed case, too. The case was filed in 2020. It is now 2024. This Court already moved the deadlines, repeatedly, at the request of the parties. At some point, the goalposts need to stop moving.

Delay has a toxic effect on litigation. Memories fade. Witnesses become unavailable. The parties suffer the psychological toll of having a lawsuit hang over their heads. The longer a case goes, the more resources that a district court has to pour into it. Jurors and the public can lose faith in the system, too. The longer it takes to get to trial, the more that people will wonder what took so long.

The parties, the public, and the judiciary have an interest in the "speedy" resolution of this dispute, as the Federal Rules require. *See* Fed. R. Civ. P. 1. The need for speed is one of the bedrocks of civil litigation, and it is baked into Rule 1 for a reason. "Just" and "speedy" are next-door neighbors in the text of Rule 1, and the proximity is no accident. They're connected.

Rule 15(a)(2) is all about justice, and as the saying goes, justice delayed is justice denied.

Fairness considerations loom large, too. Defendants pursued discovery for a year and a half, and did so based on an understanding of what the case was about. It is unfair to Defendants to have to defend a new theory of liability without having known that the theory was on the table during discovery.

"There must be a point at which a plaintiff makes a commitment to the theory of its case. Here, the proposed complaint attempts to add a whole new theory of the case four years after this action was commenced, with no explanation as to why amendment did not take place sooner . . . ." *Johnson v. Methodist Med. Ctr. of Illinois*, 10 F.3d 1300, 1304 (7th Cir. 1993); *cf. Doe v. Howe Military Sch.*, 227 F.3d 981, 990 (7th Cir. 2000) ("[P]leading is not like playing darts: a plaintiff can't keep throwing claims at the board until she gets one that hits the mark."). It's too late to shift gears, without throwing the whole case off course. *See Clay v. City of Chicago Dep't of Health*, 143 F.3d 1092, 1094 (7th Cir. 1998) (affirming denial of leave to amend when plaintiff attempted to present a new liability theory after discovery had ended).

Anyone who has ever taken a deposition knows how jarring it is to hear about a new theory of the case after the fact, when a deposition is over. When done well, taking a deposition is a carefully orchestrated exercise. Counsel put a lot of thought into crafting questions and lines of inquiry. Counsel undoubtedly would have conducted the depositions differently if Plaintiff had advanced a different theory of liability.

Covering that ground now isn't as easy as getting in a room a second time, and asking a few more questions. Counsel might have approached the last round of depositions differently. It's not as easy as picking up where you left off. Counsel might have requested different documents and served different interrogatories, too. And so on. Getting more discovery isn't as easy as going back for seconds at the Old Country Buffet.

Taking another round of depositions would be administratively difficult, too. Throughout discovery, the parties reported that they had all sorts of trouble scheduling the medical professionals for deposition. Going back for a second round wouldn't be easy.

There is no apparent reason for the late-breaking request, either. Again, the parties had over 18 months to pursue fact discovery. They had more than ample time and opportunities to build a record and gather the facts.

The parties didn't lack forewarning. Time and again, this Court told the parties that the time on the discovery clock was running out. *See, e.g.*, 11/2/22 Order (Dckt. No. 53) ("That's on the outer limits of what this Court will allow, absent special circumstances.") (referring to one year of fact discovery); 12/12/22 Order (Dckt. No. 55) ("That's roughly 10 more months of discovery in a case filed in 2020, which should be enough. The parties must proceed with diligence, and *must assume that the deadline will not move* absent a concrete demonstration of good cause.") (emphasis added); 12/21/23 Order ("[T]his case was filed in 2020, three years ago, and *it isn't getting any younger*.") (emphasis added); 2/22/24 Order (Dckt. No. 125) ("*The parties should not expect another extension of fact discovery*, so they must complete discovery with diligence and a sense of purpose.") (emphasis added); 4/8/24 Order (Dckt. No. 134) ("*The Court will not extend the schedule again*. . . . Overall, the parties got a *late start* on depositions, which led to a *mad scramble. Waiting so long to start depositions creates risks*, including the risk that you might not be able to take all of the depositions that you want.") (emphasis added).

The ripple effects of amending the complaint would extend far beyond fact discovery, too. A new theory of liability would require more fact discovery. And more fact discovery would inevitably lead to more expert disclosures and more expert discovery.

That's delay on top of delay. That's more time, for more work, with more cost.

Meanwhile, the deadline for Plaintiff's expert disclosures (May 27, 2024) has already come and gone. *See* 5/13/24 Order (Dckt. No. 142). So has the deadline for the depositions of Plaintiff's experts (July 9, 2024). *Id.* Defendants' expert reports are due in about two weeks. *Id.*

Allowing amendment would impose costs that go beyond the case, too. "Delay impairs the public interest in the prompt resolution of legal disputes. The interests of justice go beyond the interests of the parties to the particular suit; delay in resolving a suit may harm other litigants by making them wait longer in the court queue." *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990) (cleaned up); *see also Liebhart v. SPX Corp.*, 917 F.3d 952, 965 (7th Cir. 2019).

This Court is sensitive to the nature of the case, which involves a fatality and serious injuries to a child. This Court was mindful of what the case is about throughout the discovery period. That's why this Court was generous with the extensions. But at some point, deadlines need to stick, and the parties need to stop changing things up. That point has passed.

In sum, amending the complaint would delay the case, add costs to a costly case, and inflict prejudice on Defendants. *Cf. Hinton v. Advoc. Health & Hosps. Corp.*, 2023 WL

2726015, at *3 (N.D. Ill. 2023) (denying leave to amend where significant additional discovery would be required if plaintiff could pursue claims about negligence in treating the plaintiff after her son's death, when she had previously raised claims about "negligence up to" to death).

For these reasons, Plaintiff's motion for leave to amend the complaint (Dckt. No. 144) is hereby denied.

Date:  July 22, 2024

Steven C. Seeger
United States District Judge